```
STEVEN E. TARPLEY                    IN THE
    Plaintiff, Pro-se
                                     CIRCUIT COURT
-v-
                                     FOR

                                     ALLEGANY COUNTY
HOLLY PIERCE, RNP;
WILLIAM BEEMAN, R.N.                 Case No. C-17-45961
North Branch Correctional
Institution
14200 McMullen Highway, S.W.
Cumberland, Maryland, 21502

-v-
                                  *

                                  *

WEXFORD HEALTH SOURCES, Inc.
Crestpointe Corporate Center,     *
7126 Samuel Morse Drive, Suite 14
Columbia, Maryland, 21046         *
    Defendants
                                  *
*           *           *         *           *           *
```

TRUE COPY: TEST:
Dawne D. Lindsey  Clerk

RECEIVED CIRCUIT COURT ALLEGANY CO.
2017 SEP -7 P 12: 08

## CIVIL COMPLAINT

1) Plaintiff Steven E. Tarpley pro-se complains that the above named Defendants have, through their knowing, willful, deliberate and malicious acts and/or omissions violated

Exhibit 2

statutory, Common law, and/or contractual duty owed him as Health care providers.

Plaintiff is seeking Declatory, injunctive relief as well as compensatory and punitave damages from the above named defendants.

## INTRODUCTION

2) Plaintiff Steven E. Tarpley #307233 is a State Prisoner sentenced to serve a term of years in the Custody of the Department of Public Safety and Correctional Services, and at all times relevant to this complaint has been housed at the North Branch Correctional Institution, which, upon information and belief is a sub-unit of the Department of Public safety and correctional Services (D.P.S.C.S)

## DEFENDANTS

3) Defendant Holly Pierce, R.N.P. upon information and belief is a Health care Services Subcontractor acting on behalf of the Contractor WEXFORD HEALTH SOURCES Inc., [hereinafter "Wexford"] and at all times relevant was practicing at the North Branch Correctional Institution in Cumberland, Maryland.

Defendant Pierce, as an Registered Nurse Practitioner is designated as a tier-II Health care provider and responsible for addressing tier-II sick call issues, Conducting Chronic Care Clinics, and any Emergencies which may arise.

(2)

## DEFENDANTS

4) Defendant William Beeman, R.N. upon information and belief is a Health care Services Sub contractor acting on behalf of the contractor WEXFORD HEALTH SOURCES, Inc. [hereinafter "Wexford"] and at all times relevant was practicing at the North Branch Correctional Institution in Cumberland Maryland where he held the position of "Director of Nursing" [D.O.N] and whose responsibilities include, but are not limited to Administrative duties related to task completion.

5) Defendant WEXFORD HEALTH SOURCES Inc. upon information and belief is a Managed Health Care Services Provider under Contract with the Department of Public Safety and Correctional Services begining 16 May 2012 through June 30, 2017 and at all times relevant was the sole Contractor responsible for providing health care services to the units of the D.P.S.C.S. where Thomas M. Lehman, M.D. CCHP serves as "Corporate Medical Director", Utilization Management, and Clinical Services Director.

## STATEMENT OF FACTS

6) Plaintiff has been diagnosed with many injuries which he had suffered both prior to, and during his incarceration; Fractured Right hip; Ruptured disc at L5-S-1; Ruptured Globe, [Right eye], and Bone Spur at C3-C7 vertebrae.

On April 10, 2011 Plaintiff suffered hyperextention of the C3-C7

(3)

## STATEMENT OF FACTS

Vertebrae during an altercation with a mentally deranged inmate in the South Yard of N.B.C.I.

In November 7, 2000 Plaintiff had been struck by a van on Jerrettsville Pike, and suffered damage to the A.C.L/M.C.L in his right knee and fractured right hip. Plaintiff was treated at the Greater Baltimore Medical Center [G.B.M.C.] in Towson, Maryland. Plaintiff was imobilized, Rt. hip and instructed to return in seven (7) days after the swelling went down, or if it did not go down. See CMS Entry 11-16-00.

On November 8, 1987, Plaintiff suffered a ruptured disc at the L5-S1 level, and was given traction, ultra-sound, and medication to reduce the swelling & pain over a period of six weeks.

7) Plaintiff had been treated with Muscle Relaxers, Baclofen begining December 2011 for muscle spasams and abrupt interruptions of function in his left arm & leg resulting from the Bone Spur condition diagnosed by X-Ray, January 2012.

8) In late May 2016 Plaintiff complained that he was expierencing extreme discomfort in his neck and new lower back. Dr. Ashraf ordered Tramadol for 120 days.

9) Plaintiff inquired "What then?" Dr. Ashraf had already told him that... this condition is degenerative, and will not likely go away completely but only wax and wain over time.

10) In September 2016 during Plaintiff's subsequent chronic care clinic, in spite of Plaintiff's request for a more "permenant solution" such as a brace or consult with a speesalest

(4)

## STATEMENT OF FACTS

as to what may produce a more lasting, even permenant result, however, Ashraf informed that Plaintiff should continue this regimine for an extended period of time.

11) December 15, 2016, enter Defendant Holly Pierce, R.N.P. whom conducted Plaintiff's chronic care clinic.

Plaintiff again inquired about seeing a specialest to assess his condition and possibly recomend an alternative course of treatment. Ms. Pierce informed that she had been told that "utilization Managment" would not authorize any outside consultations at this time. Ms. Pierce Re ordered Tramadol, but discontinued Baclofen. Plaintiff informed that his bottom bunk order would need to be renewed, since it would expire January 7, 2017. Ms. Pierce indicated that it would be done.

12) May be because Plaintiff was no longer recieving baclofen, or another reason, but Plaintiff's lower back pain worsened, thus Plaintiff submitted (several) sick call requests that went unanswered. before January 27, 2017 Plaintiff was seen by Holly Pierce whom pretended to peform an examination, asked him to move in various ways bend at the waist, which Plaintiff could not, at least not without stretching his right or left leg to the side because his muscles would constrict in the back of his legs.

13) Ms. Pierce at this time had her "Watch-Dog" officer Michael Stallings actually inside the treatment room instead of in the hallway. When Plaintiff would stretch his leg to the side

(5)

## STATEMENT OF FACTS

in order that he could bend at the waist as Ms. Pierce had asked, Stallings would interrupt by ordering that Plaintiff "must not do that", stretch his leg out to the side. Defendant Holly Pierce did not interceed, or direct Stallings not to interfere.

Then Stallings began asking the questions; "You say your current medicine is not effective"? Plaintiff responded to Ms. Pierce "No, not like it used to be; Now it lasts only three to four hours". I am back in fairly serious pain by dinner time, approx. 1700hrs.

Pierce looked at Stallings, then informed that she was going to discontinue the Tramadol ... because it did not help.

14) It was not until Chronic care clinic March 13, 2017 that Dr. Ashraf, not Holly Pierce because Plaintiff had filed a Malpractice complaint, both with NBCI administrators and Maryland Board of Nursing; NBCI 2282-16, and 2017-070 respectively, ordered any medication in place of the Tramadol and Baclofen which she had just discontinued.

15) Plaintiff inquired to Dr. Ashraf about his bottom bunk order. Ashraf simply quipped, "Holly must have forgotten to sign it." When Plaintiff learned that Ashraf was ordering "CAPSASIAN and TYLENOL" he asked Ashraf why had he changed is diagnosis? Ashraf explained that he was doing this only because the "Administration" was on him.

(6)

## STATEMENT OF FACTS

16) In June 2017 Dr. Ashraf re-ordered Plaintiff's Tramadol and Baclofen and explained that the "Administration does not want me ordering Tramadol", but I've seen your chart, and can see you genuinely need it, and there is no evidence that you are abusing it, so I have re-ordered it for another 120 days.

17) On June 26, 2017 Plaintiff is summoned to the treatment room, by none other than Defendant Holly Pierce whom claimed that Plaintiff had submitted a sick-call request, which he denied. Defendant Holly Pierce then informed "I know you're getting Tramadol again, but I have to discontinue it". I am being required to get, [take] all of the Non-Formulary medications. I will be ordering "CYMBALTA", and "MOBIC" for you.

18) Plaintiff complied and accepted the MOBIC and CYMBALTA however, it is noteworthy that when he took CYMBALTA in the morning by lunch time he noticed his heart was racing, and he had a very bad headache.

19) Plaintiff submitted a sick call request directed specifically to Holly Pierce with a may be three (3) page description of the undesirable effects of the CYMBALTA and how he needed to consume four (4) not just one (1) dose of Mobic each day in order to be able to move, no less decend from the top bunk which Plaintiff now was

(7)

## STATEMENT OF FACTS

now required because Ms. Pierce had failed to renew his four year running bottom bunk order.

Ms. Pierce "perried" his concernes about the intolerable side effects of CYMBALTA and stated that she would be increasing the dosage after one week, then dismissed him from the treatment room, this time under supervision of cfc. Christopher McKenzie.

20) Plaintiff followed Defendant Pierce's direction for several more days in spite of the headaches, blurred vision, weakness in the knees, on 30 June 2017 it was so bad Plaintiff needed help from his celly Darryl K. Hill to get down off his bunk for lunch.

## COMPLAINT

21) Plaintiff adopts by refrence the statements/facts set forth above with the same force and effect as if set forth fully herein, and states:

Because Defendant Pierce was far less than forthcomming with any requests about Medical History, or Preexisting conditions as well as disclosure of any [Possible] side effects from CYMBALTA, Plaintiff was forced to investigate on his own: MOSBY'S DRUG REFRENCE, 22nd Ed. 2009 at 408, duloxentine (B), or "CYMBALTA" is classified as a "Miscellanious Anti-depressant";

(8)

CYMBALTA is intended for use in treatment of MAJOR DEPRESSIVE DISORDERS; and Neuropathic pain associated with DIABETIC NEUROPATHY. See also PHYSICIAN's DESK REFERENCE, or [P.D.R] at 392-395, diabetic peripheral neuropathy, a painful nerve disorder associated with diabetics that effects the hands, legs and feet. PDR at 392. Plaintiff although he had been diagnosed as "Diabetic" in 2005 while at the Jessup Correctional Institution, and monitored and administered insulin numerous occasions at JCI. However, when Plaintiff arrived in [CUMBERLAND] November 1, 2006, medical staff insisted Plaintiff is Not Diabetic and stopped all monitoring of his blood sugar.

The P.D.R. warns that "side effects cannot be anticipated. If any develop, or change in intensity... tell your doctor as soon as possible. "Only your doctor can determine if it is safe to continue using Cymbalta."

When Plaintiff informed Defendant Pierce, she dismissed him without so much as even a cursory examination. The next time Plaintiff was seen by Defendant Pierce the side effects were far more debilitating than the pain, and because Plaintiff had stopped taking CYMBALTA the previous morning, there was no way to test for, measure and document any adverse effects. Cymbalta has a relatively short half-life of only twelve (12) hours MOSBY's at 408.

The P.D.R at 394 warns "be sure to tell your doctor if you have Diabeties, Glaucoma, High Blood Pressure, or a Seizure Disorder. It is also NOT RECOMENDED if you have liver

---(9)---

problems or severe kidney disease.

Defendant Pierce did not even ask, nor did she follow procedures set forth in the D.P.S.C.S Clinical Services & Inmate Health Operations Manuals [CSIHOM] see Chapter 1, sech II, G: which directs, in relevant part "Sick call encounters for ALL disciplines shall include a review of the hard copy and electronic medical record of the patient".

IF Defendant Pierce [had] taken time away from flirting with custody staff and presumably [her boyfriend] officer Stallings she would have seen that Plaintiff has a family history of Diabeties, is being treated for Chronic Hypertension, and is also a Hepatitis-C patient, and thus [has] liver problems. But she should know all that, since Defendant Pierce had seen Plaintiff three (3) times for Chronic Care Clinic.

Plaintiff has not taken CYMBALTA since June 20, 2017 has submitted VOLUMES of sick call requests asking that he may be given something for his lower back pain without response until on or about July 23, 2017 Plaintiff was seen in Housing Unit-1 by a tier-I healthcare Provider who informed that she was referring Plaintiff "...to the Provider", a Level-II healthcare provider R.N.P., P.A.. However, inspite of many others being brought out for sick call, Plaintiff still waits, IN pain.

-(10)-

The CSIHOM, Ch.1, § II at 6,5 explains... any complaint that merits a visit to the next level,...Shall be done at the same time as the original visit. There should be no delay in the referral upward." "ONLY if you have made complaints to the Nursing Board."

Defendant WEXFORD HEALTH SOURCES, INC. is under contract to provide health care to the DPSCS and it's units and may not delay or refuse performance under a change order for any reason and will proceed immediately and dilligently with performance of the contract.

For whatever reason, Plaintiff has been/is being refused prompt competent and proper healthcare.

Matters of medical, psychiatric, and dental judgment are (1) The province of qualified healthcare personnel; and (2) Not subject to interference by facility personnel.

Plaintiff has suffered since January 27, 2017 save for a brief intermission occasioned by Dr. Ashraf M.D. until the Defendant Pierce stepped in for the [second] time and maliciously undid everything that the higher authority, an M.D. had just done.

Neither WEXFORD nor any of it's Administrative Personnel Defendant Bill Beeman have lifted one lazy finger to stop it.

Plaintiff has been left to suffer the pain caused by his back injury since January unmitigated through this August 19, 2017 through the Neglegent, Recklessly-Indifferant and incompetent acts of

(11)

Defendants Beeman and Pierce.

## LEGAL CLAIMS

I. <u>MEDICAL MALPRACTICE</u>: Defendants Wexford Health Sources Inc. and Holly Pierce as Plaintiff's Physicians Failed To Exercise Reasonable Care and Due Dilligence In The Diagnosis And Treatment Of Plaintiff's Back Pain;

II. <u>DELIBERATE INDIFFERANCE</u>: Defendants WEXFORD and Holly Pierce, RNP were deliberately indifferant to Plaintiff's serious Medical Needs while Plaintiff was Confined at the North Branch Correctional Institution;

III. <u>MALICIOUS INDIFFERANCE/ RETALIATION</u>: Defendant Holly Pierce did Knowingly, willfully, and Maliciously lobby her co-workers and custody staff, Against Plaintiff after he complained to the Maryland Board of Nursing against Holly Pierce, creating a Hostile Environment for Him to Live.

IV. <u>OBSTRUCTION OF MEDICAL CARE</u>: Defendant WEXFORD and Beeman Knowingly, willfully, and Maliciously Obstructed The Implementation of Measures To Prevent The Exascerbation of Plaintiff's Lower Back Injuries And Pain;

(12)

## RELIEF REQUESTED

IV. Plaintiff respectfully requests that this court shall find that Defendants WEXFORD and Beeman did knowingly, willfully and maliciously obstruct the implementation of measures to prevent the exasperation of Plaintiff's lower back injuries and Pain, and award Plaintiff $100,000.00 in punitive damages and future Medical Expenses incurred due to additional injury caused by this failure.

V. Plaintiff respectfully requests that this Court shall find that (i) Plaintiff is suffering pain from a lower back injury; (ii) That the DPSCS through Defendant WEXFORD is responsible for treating Plaintiff's injuries so long as Plaintiff remains in the custody of the DPSCS; and (iii) Enjoin the Defendant WEXFORD from providing Medical Services to Plaintiff so long as he remains in the DPSCS Custody; and (iv) Require the DPSCS to Provide Medical Treatment from an alternate Health Care Provider.

## VERIFICATION

I, Steven E. Tarpley #307233 do certify that the claims made herein are true, correct and based upon personal knowledge.

s/ Steven E Tarpley
Steven E Tarpley #307033

STEVEN E. TARPLEY        IN THE

  Plaintiff, Pro-se
                         CIRCUIT COURT

                    *

                         FOR

-v-                 *

                         ALLEGANY COUNTY
                    *

                         Case No.
                    *
WEXFORD HEALTH SOURCES
                    *
Inc., et al. Defendants.

*        *          *         *         *

RECEIVED CIRCUIT COURT ALLEGANY CO. 2017 SEP -7 P 12: 08

## PRELIMINARY INJUNCTION

Plaintiff Steven E. Tarpley, pro-se pursuant to Maryland Rules 15-501 through 15-505, along with Rules 2-303 through 2-305, and 2-648(a) respectfully requests this Honorable Court shall issue ORDER enjoining Defendant WEXFORD HEALTH SOURCES, Inc. from delaying Medical Evaluation and Treatment.

1). Plaintiff is a state Prisoner housed at the North Branch Correctional Institution in Cumberland, Maryland, which is one of the Units of the Department of Public Safety and Correctional Services.

2) Defendant Wexford Health Sources Inc. Headquartered at 501 Holliday Drive, Foster Plaza Four, Pittsburgh, Pennsylvania, 15220; Holding Local Office and operating through Wexford Health Sources, Inc., 7126 Samuel Morse Drive, Suite 140, Columbia Maryland 21046;

3) Defendant Wexford is contracted to provide Medical Personnel, services, hardware, software, and other deliverables to the Department of Public Safety and Correctional Services and the Units thereof;

4) Begining December 15, 2016 Defendant Wexford through their agents Named in the complaint have REFUSED to provide Medical treatment; including but not limited to (i) A comprehensive and competent examination and evaluation of Plaintiff's serious medical condition which causes extreme pain, dysfunction in his limbs and limited but painful mobility; (ii) Provide competent and comprehensive therapy in the form of Medications to Midigate Plaintiff's chronic back pain in a timely manner;

5) These problems are serious in nature and pose a very real and pervasive threat to Plaintiff's well being in this Prison environment where there is no shortage of sociopathic elements, Custody Staff included, whom are eager and willing to exploit personal infirmities

of another inmate.

6) Plaintiff has no other remedy at law, not in equity nor any other form which would halt the wrongs being done, the pain caused, nor the potential and imminant threat of serious injury suffered at the hands of another, and made possible by Defendants Malfeasance;

## AFFIDAVIT

I, Steven E. Tarpley #307233 do certify that I am over Eighteen (18) years of age, have personal knowledge of the facts set out above; and hereby swear and affirm under the penalties of perjury that these are true, correct, and based upon personal knowledge.

s// Steven E. Tarpley
Steven E. Tarpley #307233
North Branch Correctional
Institution
14100 McMullen Highway
Cumberland, Maryland
21502-5777